IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| FAT BRAIN TOYS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>QUANZHOUTAISHANGTOUZIQUYUJIN<br>GMAOYIYOUXIANGONGSI,<br><br>Defendant. | **8:25CV679**<br><br><br>**MEMORANDUM<br>AND ORDER** |

This matter is before the Court on plaintiff Fat Brain Toys, LLC's ("Fat Brain") Motion for Default Judgment (Filing No. 23) against defendant Quanzhoutaishangtouziquyujingmaoyiyouxiangongsi, doing business as Awalvy ("Awalvy"). *See* Fed. R. Civ. P. 55(b)(2); NECivR 55.1(c). Fat Brain moved for default judgment on the basis that Awalvy failed to plead or otherwise defend itself in this action. For the reasons that follow, Fat Brain's motion is denied.

I.      BACKGROUND[1]

Fat Brain is a toy company with its principal place of business in Elkhorn, Nebraska. It develops, manufactures, distributes, and sells its own toys. One of Fat Brain's most popular toys is "AIR TOOBZ." AIR TOOBZ is a science, technology, engineering, and mathematics ("STEM") toy for children that blows colorful foam balls through a series of connectable, translucent tubes. Fat Brain began to manufacture, distribute, and sell AIR

---

[1]Based on the unchallenged entry of default against Awalvy (Filing No. 22), the Court accepts as true the well-pleaded factual allegations in Fat Brain's complaint (Filing No. 1). *See Cutcliff v. Reuter*, 791 F.3d 875, 882 (8th Cir. 2015) ("A defaulted claim [ ] precludes a party from contesting the facts in the complaint that establish liability."). The Court does not accept "facts relating to the amount of damages," *see id.*, "mere conclusions of law[, or] recitations of the elements of the causes of action," *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019).

1

TOOBZ in September 2023.  Since then, AIR TOOBZ has become widely renowned and has won multiple awards.

Awalvy is a foreign entity or individual doing business in Fujian Province, China.  Awalvy sells an "Air-Powered STEM Building Toy" ("Awalvy's toy") that looks and functions like AIR TOOBZ on third-party websites like Amazon.com.

Fat Brain sued Awalvy on November 25, 2025 (Filing No. 1) alleging trade-dress infringement under section 43(a) of the Trademark Act of 1946 (the "Lanham Act" or the "Act"), 15 U.S.C. § 1125(a), based on Awalvy's alleged use of AIR TOOBZ's trade dress.[2]

According to Fat Brain, Awalvy is infringing on its trade dress by copying AIR TOOBZ's packaging and design.  AIR TOOBZ uses an orange color scheme and is packaged in an orange, rectangular box with an orange handle on top.  Fat Brain's company logo—a smiling, cartoon brain—is the same shade of orange.

Awalvy's box uses an orange-and-white color scheme with a white handle affixed on top of the box.  Awalvy's toy uses the same color scheme as AIR TOOBZ and its design is substantially similar to AIR TOOBZ.  AIR TOOBZ uses the slogan, "Air-Powered Play" while Awalvy uses the phrase "Air-Powered STEM Building Toy."  Both boxes contain identical descriptions of the toys' components.

Fat Brain states it expended considerable time and resources developing and promoting AIR TOOBZ and has developed "substantial recognition and goodwill among the public and the trade throughout the United States."

On November 26, 2025, the Court granted Fat Brain's request (Filing No. 5) to serve process by email (Filing No. 13).  Though reportedly served with process via email on

---

[2]Although the complaint initially mentions a second claim for "false designation of origin," Fat Brain does not develop it further or address it elsewhere in the complaint as a distinct claim.  Accordingly, the Court deems the claim abandoned and does not analyze it here.

2

December 1, 2025 (Filing No. 18), Awalvy has not answered the complaint, entered an appearance, or otherwise defended this case. *See* Fed. R. Civ. P. 55.

On January 14, 2026, the Clerk of Court entered default against Awalvy, satisfying the first step of the two-step process under Rule 55(a). *See*, *e.g.*, *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998). Now pending before the Court is Fat Brain's motion for default judgment pursuant to Rule 55(b)(2) (Filing No. 23). Fat Brain says it does not seek a hearing on damages at this time, but requests injunctive relief enjoining Awalvy from marketing, manufacturing, distributing, or selling the "Air-Powered STEM Building Toy."

## II.    DISCUSSION

### A.    Standard of Review

Under Rule 55, the Court may enter a default judgment against a defendant that has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(a), (b)(2). But default judgment is not automatic. *See United States ex rel. Time Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993). Fat Brain is not entitled to a default judgment simply because Awalvy is in default. *See id.* Whether to enter a default judgment is committed to the "sound discretion of the trial court." *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015). Default judgments are "not favored by the law and should be a rare judicial act." *Id.* (quoting *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995) (citations and quotation marks omitted)).

In reviewing Fat Brain's motion, the Court considers whether it has jurisdiction to enter judgment along with a variety of other relevant factors, including:

> the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; [ ] whether the grounds for default are clearly established or are in doubt[;] how harsh an effect a default judgment might have; [and] whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

*Id.* (alteration omitted) (quoting *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, 513 F. Supp. 2d 1, 3 (S.D.N.Y. 2007)); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2682 (4th ed. 2025) ("Before a default can be entered, the court must have subject-matter jurisdiction and jurisdiction over the party against whom the judgment is sought.").

As relevant here, the Court must also determine whether Fat Brain's complaint sets forth "unchallenged facts constitut[ing] a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A C. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed.1998)).  In some ways, a motion for default judgment is conceptually "like a reverse motion to dismiss for failure to state a claim." *Richardson v. Duncan*, 117 F.4th 1025, 1029-30 (8th Cir. 2024) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam)).  Thus, if Fat Brain's complaint fails to state a claim, it is not entitled to default judgment. *See id.*  "Determining whether [Fat Brain's] complaint states a plausible claim for relief" is a "context-specific task," requiring the Court to rely "on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B.    Jurisdiction

Fat Brain's reliance on the Lanham Act gives the Court subject-matter jurisdiction. *See* 28 U.S.C. § 1331; 15 U.S.C. § 1121.  Personal jurisdiction is a tougher question. Normally, the Court would not raise personal jurisdiction *sua sponte* as objections to personal jurisdiction may "be waived, either expressly or by not asserting them in a timely manner[.]"  *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990). However, in a default case such as this one, the Court may "satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant."  *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005); *see also Sinoying Logistics Pte Ltd. v. Yi Dan Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (agreeing with other circuit courts that "when a

4

defendant declines to appear . . . [a court] may first assure itself that it has personal jurisdiction over the defendant" before entering a default judgment and citing cases); *Legacy Rec., Inc. v. Mbullo*, No. 8:23CV519, 2024 WL 6859420, at *4 (D. Neb. Oct. 15, 2024). A "judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant." *Kulko v. Super. Ct. of Cal.*, 436 U.S. 84, 92 (1978).

Nebraska's long-arm statute is coextensive with the reach of federal due process. Neb. Rev. Stat. § 25-536(2). Therefore, to exercise personal jurisdiction over a nonresident defendant, the defendant need only have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). This means a "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

Fat Brain argues the Court may exercise personal jurisdiction over Awalvy because Awalvy "directly targets business activities toward consumers in the United States, including Nebraska, through fully interactive, e-commerce stores." In light of Fat Brain's allegations, the Court agrees that it has personal jurisdiction over Awalvy. *See Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 615 (8th Cir. 1994) (holding a Japanese manufacturer subject to personal jurisdiction in Nebraska under a "stream of commerce" theory because the manufacturer used a South Dakota distributor which targeted Nebraska, even though the manufacturer denied actual knowledge of any Nebraska sales). Like the manufacturer in *Barone*, which established sufficient minimum contacts with Nebraska by "pour[ing] its products into regional distributors throughout the country," and "reap[ing] the benefits of its network of distributors," *id.*, Awalvy presumably benefited from the distribution efforts of third-party platforms like

Amazon.com which "target[] sales to Nebraska residents" and offer shipping to Nebraska (Filing No. 1).

### C.     Trade-Dress Infringement under the Lanham Act

The Court now turns to whether Fat Brain's factual allegations plausibly suggest a claim for trade-dress infringement under the Lanham Act.  *See Murray*, 595 F.3d at 871.

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a federal cause of action for trade-dress infringement.  *Gateway, Inc. v. Companion Prods., Inc.*, 384 F.3d 503, 507 (8th Cir. 2004).   "Trade dress is the total image of a product, the overall impression created, not the individual features."  *Nat'l. Presto Indus., Inc. v. U.S. Merch. Fin. Grp., Inc.*, 121 F.4th 671, 680 (8th Cir. 2024) (quoting *Gateway*, 384 F.3d at 507).  "Not every trade dress, however, is protected under the Lanham Act."  *Children's Factory, Inc. v. Benee's Toys, Inc.*, 160 F.3d 489, 494 (8th Cir. 1998).

To warrant protection under the Act, Fat Brain must plausibly allege its trade dress is "(1) inherently distinctive or acquired distinctiveness through secondary meaning; (2) nonfunctional; and (3) its imitation would result in a likelihood of confusion in consumers' minds as to the source of the product."  *Gateway*, 384 F.3d at 507.

### 1.     Distinctiveness

Trade dress is distinctive when it identifies a product source "because it is either inherently distinctive" or "has acquired secondary meaning."  *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 869 (8th Cir. 1994).  In an unregistered trade-dress case, a product's design, like color, "is distinctive, and therefore protectible, only upon a showing of secondary meaning."  *Wal-Mart Stores, Inc. v. Samara Bro., Inc.*, 529 U.S. 205, 216 (2000).   "Secondary meaning occurs when 'in the minds of the public the primary significance of a [mark] is to identify the source of the product rather than the product itself.'"  *Gateway*, 384 F.3d at 508 (alteration in original) (quoting *Wal-Mart*, 529 U.S. at 211).

6

In short, to successfully plead a trade-dress claim against Awalvy for producing a knockoff of its design, Fat Brain must plausibly allege AIR TOOBZ's "design[ ] had acquired 'secondary meaning'" such that it identifies Fat Brain as the "source of the product rather than the product itself" even when Fat Brain's other marks are absent. *Munro v. Lucy Activewear, Inc.*, 899 F.3d at 585, 589 (8th Cir. 2018) (quoting *Wal-mart*, 529 U.S. at 211).

Accepting Fat Brain's factual allegations as true, the complaint fails to plausibly allege that AIR TOOBZ's design or color has acquired a secondary meaning in the minds of consumers.  *See Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'")).

First, words that describe the product—like "air-powered" or the list of components on the box—lack inherent distinctiveness.  *See Wal-Mart*, 529 U.S. at 212.  Consequently, they are not protectable trade dress.  *See Gateway*, 384 F.3d at 507.

Next, Fat Brain's claims regarding color and product design also fail to plausibly allege a secondary meaning.  While the color of AIR TOOBZ's packaging is the same orange that appears in Fat Brain's logo, no facts suggest that customers identify the color orange as Fat Brain's.  *See Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 166 (1995).  And although the Court may reasonably infer that AIR TOOBZ's design appears to be somewhat distinct, "even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful or more appealing" to consumers.  *Wal-Mart*, 529 U.S. at 213.  Product design "almost invariably serves purposes other than source identification," *id.*, and is "subject to copying" absent a patent or copyright.  *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001).  In sum, Fat Brain's factual allegations do not allow the Court to reasonably infer that AIR TOOBZ's design was intended to identify the source of the

7

product, rather than make the product more useful and appealing. *See Wal-Mart*, 529 U.S. at 213; *see also Aromatique*, 28 F.3d at 871 ("Where there is a demand for a type of product, capitalizing on that demand by copying that product does not necessarily indicate that the original product has secondary meaning.").

To the extent that Fat Brain's argument stems from a belief that the Lanham Act prohibits copying in any form, that intuition is misplaced. *See TrafFix*, 532 U.S. at 29; *Pocket Plus, LLC v. Pike Brands, LLC*, 53 F.4th 425, 433 (8th Cir. 2022). "[T]he Lanham Act was not designed to protect originality or creativity and it does not create a cause of action for plagiarism." *Munro*, 899 F.3d at 589 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36-37 (2003)). Nor does the Lanham Act "protect [Fat Brain] from a [Awalvy]'s imitation of [its] marketing concept." *Aromatique*, 28 F.3d at 871. Section 43(a) "does not have boundless application as a remedy for unfair trade practices" and is not a "federal codification of the overall law of unfair competition." *Dastar*, 539 U.S. at 29 (internal quotation marks omitted). Courts construe section 43(a) narrowly, wary of allowing "misuse or over-extension of trademark [ ] protections into areas traditionally occupied by patent or copyright." *Dastar*, 539 U.S. at 34 (internal quotation marks omitted); *see also TrafFix*, 532 U.S. at 34-35. Absent a patent or copyright, Fat Brain's product designs are generally "subject to copying." *TrafFix*, 532 U.S. at 29.

### 2.   Functionality

Fat Brain's allegations also fall short under the nonfunctional element. To be protectable, trade dress must be nonfunctional. *Gateway*, 384 F.3d at 508. The traditional rule is that a product feature is functional if "it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *TrafFix*, 532 U.S. at 33. Conversely, a feature is nonfunctional "if it is an arbitrary embellishment primarily adopted for purposes of identification and individuality." *Gateway*, 384 F.3d at 508 (quoting *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1986)).

But the line between functional and nonfunctional is "not always clear." *Pocket Plus*, 53 F.4th at 433 (explaining that some designs are so fashionable that they become functional because the look itself is what the customer is buying); *see also Wal-Mart*, 529 U.S. at 213 (noting that aesthetic embellishments may "render the product itself more useful or more appealing" thus serving an esthetic purpose); *Gateway*, 384 F.3d at 508 ("[I]f the trade dress is an important ingredient in the commercial success of the product, it is clearly functional.").

Fat Brain's complaint is devoid of any allegations that AIR TOOBZ's design or packaging are nonfunctional. And aside from color, the photographs in the complaint do not allow the Court to reasonably infer that Fat Brain's claimed trade dress is nonfunctional. Some elements Fat Brain points to as protectable trade dress—such as the box dimensions and handle—presumably serve a purpose beyond "identification and individuality." *Aromatique*, 28 F.3d at 873.

Fat Brain highlights that both products have photographs of the toy and identical words describing the toy components on the outside of the packaging. But photos and words describing the product do not qualify as protectable trade dress. *See Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1248 (8th Cir. 1990) (concluding that a woodworking magazine's easy-to-follow instructions, materials lists, and cutting diagrams were functional and not protectable as trade dress); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1002 (2d Cir. 1997) (noting the usefulness of "displaying the actual product to the consumer").

Fat Brain's other factual allegations lend little support to its trade-dress claim. Fat Brain alleges it has expended considerable time and resources in developing and promoting AIR TOOBZ. But the Lanham Act "does not protect trade dress in a functional design simply because an investment has been made to encourage the public to associate a particular functional feature with a single manufacturer or seller." *TrafFix*, 532 U.S. at 34-35.

### 3.    Likelihood of Confusion

Likelihood of confusion as to source is a closer call.  Whether confusion is likely requires balancing several factors:

> (1) the strength of the owner's [trade dress]; (2) the similarity between the owner's [trade dress] and the alleged infringer's [trade dress]; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the [trade dress] owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase.

*Children's Factory*, 160 F.3d at 494 (alterations in original).

No single factor is dispositive.  *Gateway*, 384 F.3d at 509.  That said, the Lanham Act aims to "protect[ ] consumers from confusion as to source," which does not justify reading the Act "so broadly that it provides a way for inventors to stifle indefinitely the mimicry of items that have been neither patented nor copyrighted."  *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 589 (6th Cir. 2015).  "The right question [under the Lanham Act] is whether the consumer knows who has produced the finished product" even if "most of the product's economic value came from elsewhere."  *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005) (Easterbrook, J.) (citing *Dastar*, 539 U.S. at 31).

Fat Brain's allegations that the toys are similar is "merely consistent with" likelihood of confusion, but it "stops short" of plausibly alleging *source* confusion. *Twombly*, 550 U.S. at 557.  Fat Brain's complaint shows that each party's product packaging prominently displays its own unique name, logo, and phrases.  AIR TOOBZ's box displays the phrases "Air-Powered Play," "Fat Brain Toy Co.," "Power Up Playtime," and "Let the creativity flow!"  Awalvy's box says, "Air-Powered STEM Building Toy," "Accompany Children Happy Childhood," and "Play with air!"  Fat Brain's claim that Awalvy's toy is "likely to cause confusion" as to source based on product similarity alone is not plausible.  While the Court must take all the factual allegations in the complaint as

10

true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

## III.   CONCLUSION

Although the Court is persuaded on this record that Awalvy's toy is an imitation of Fat Brain's AIR TOOBZ, that alone cannot establish trade-dress infringement. *See Children's Factory*, 160 F.3d at 497-98; *Munro*, 899 F.3d at 589-90. The Court offers no opinion as to what intellectual property protections Fat Brain may be able to get, only that it cannot obtain "a species of perpetual patent and copyright" through Lanham Act litigation. *Dastar*, 539 U.S. at 33-34. Unfortunately for Fat Brain, "in many instances there is no prohibition against copying goods and products." *Nat'l Presto Indus.*, 121 F.4th at 681. While this may feel unfair, "federal law encourages wholesale copying, the better to drive down prices" because "[c]onsumers rather than producers are the objects of the law's solicitude." *Bretford*, 419 F.3d at 581 (Easterbrook, J.).

Because the unchallenged facts in plaintiff Fat Brain Toys, LLC's complaint do not establish a legitimate cause of action for trade-dress infringement under the Lanham Act, *see Murray*, 595 F.3d at 871, the Court declines to enter default judgment against defendant Quanzhoutaishangtouziquyujingmaoyiyouxiangongsi, at this time. Accordingly, Fat Brain's Motion for Default Judgment (Filing No. 23) is denied.

IT IS SO ORDERED.

Dated this 5th day of March 2026.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

11